**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MELISSA SUE SHRAWDER, | : | |
| | : | |
| *Plaintiff*, | : | |
| v. | : | 2:24-cv-05715 |
| | : | |
| BOROUGH OF POTTSTOWN, *et al.*, | : | |
| | : | |
| *Defendants*. | : | |

# **MEMORANDUM OPINION**

Plaintiff Melissa Sue Shrawder sued Borough of Pottstown Police Officers Jacob Ritter (Ritter) and Anthony Fischer (Fischer) under 42 U.S.C. § 1983 alleging excessive force in violation of the Fourth Amendment to the United States Constitution, conspiracy, and bystander liability. *See generally* Complaint (Dkt. No. 1). Plaintiff also sued the Borough of Pottstown under § 1983 alleging that it adopted, maintained, and accepted policies condoning constitutional rights violations (referred to as a "*Monell* claim") (collectively, the Defendants).[1] *Id*. Before the Court is Defendants' Motion for Summary Judgment (Dkt. No. 22) and accompanying Brief in Support thereof (Dkt. No. 22-1). For the following reasons, the Court grants Defendants' Motion for Summary Judgment.

[1] Initially, Plaintiff brought bystander and supervisor liability claims against various John Doe defendants. *See Complaint*. Plaintiff voluntarily withdrew those claims. *See* Stipulation and Order (Dkt. No. 24).

## I. Factual Background

On October 26, 2022, Plaintiff filed an application for involuntary emergency examination and treatment pursuant to the Pennsylvania Mental Health Procedures Act (MHPA), 50 P.S. § 7302.[2] Joint Statement (J.S.) (Dkt. No. 21) at ¶ 1. The intended patient was her boyfriend, Jason Anthony Nichols (Nichols). *Id.* Notably, in the 302 application, Plaintiff described Nichols's violent behavior towards her and affirmed that she believed he was a danger to himself and others. *Id.* at ¶ 2. Accordingly, Officers Ritter and Fischer were dispatched to assist the Montgomery County Emergency Services (MCES) personnel with serving the 302 mental health warrant for Nichols. *Id.* at ¶ 3. En route, dispatchers informed Officers Ritter and Fischer that Nichols had a separate outstanding Montgomery County bench warrant for his arrest. *Id.* at ¶ 4.

Plaintiff was initially informed by MCES personnel that they would advise her when they would execute the 302 warrant so that she could meet them at Nichols's residence. *Id.* at ¶ 14. However, Officers Ritter and Fischer, arriving separately, met with two responding MCES workers and entered the rooming house where Nichols was staying before contacting Plaintiff. *Id.* at ¶¶ 6–8. The officers knocked on Nichols's door and made several verbal attempts to have him open up. *Id.* at ¶¶ 9–12. Eventually, one of the MCES workers on scene called Plaintiff and advised her that both MCES and the police were present at Nichols's residence and that he

[2] This is often referred to as a Section 302 commitment.

refused to open his door. *Id.* at ¶ 13. MCES requested Plaintiff's assistance obtaining Nichols's compliance. *Id.*

Shortly thereafter, Plaintiff arrived on scene, knocked on Nichols's door and asked him to open up. *Id.* at ¶ 19. A few minutes later, Nichols opened the door and Plaintiff voluntarily entered Nichols's room ahead of the officers. *Id.* at ¶ 21.

Once Plaintiff entered the room, Plaintiff and Nichols hugged. *Id.* at ¶ 22. Plaintiff testified that she was not concerned about Nichols attempting to harm her, despite past assaultive behavior towards her, because she had spoken with Nichols the night before and told him that she was filing 302 paperwork for him, and he indicated that he was willing to go along with being involuntarily committed. *Id.* at ¶ 24.

Shortly after Plaintiff and Nichols embraced, Officer Fischer stepped into the room and unsuccessfully attempted to detain Nichols by taking hold of Nichols's right wrist, drawing it away from Plaintiff, and putting a handcuff on him. *Id.* at ¶ 25. Officer Fischer later testified that he attempted to handcuff Nichols to keep Plaintiff safe, given Nichols's violent past, Plaintiff's close proximity to Nichols, and the fact that the officers had not yet had the opportunity to check for weapons. *Id.* at ¶¶ 26–27.

Nichols began to struggle and pull away from Officer Fischer, who was attempting to cuff his right hand, while Plaintiff's arms were still wrapped around Nichols's torso. *Id.* at ¶ 29. Nichols removed his left arm from Plaintiff's body and attempted to throw a closed-fist punch at Officer Fischer. *Id.* at ¶ 31.

As Nichols began struggling against Officer Fischer, Officer Ritter entered the room to assist with detaining Nichols. *Id*. at ¶ 30. Officer Ritter reached out to push a resisting Nichols onto the bed and used his hands to separate Plaintiff from Nichols. *Id*. at ¶ 32.

Officer Ritter testified that his primary focus at the time was to gain control of Nichols. *Id*. at ¶ 39. He also testified that when he made contact with Plaintiff, his intent was to separate the individuals to detain Nichols. Exhibit J to the J.S. (Dkt. No. 21-7) at 41:23–42:3.

During the struggle, Plaintiff was pushed away into a nearby chair and because the chair was on wheels, it slid and Plaintiff collided with a stand or dresser. *Id*. at ¶¶ 32, 41. Plaintiff suffered a torn tendon in her right knee and a partial tear of the gluteus minimus. *Id*. at ¶ 48. Plaintiff received hip surgery, specifically an arthroscopic debridement of the labrum and a trochanteric bursectomy. *Id*.

## II. Procedural History

Plaintiff filed this suit on October 25, 2024 asserting various claims under 42 U.S.C. § 1983 against the Defendants, including claims against John Doe defendants. *See generally* Complaint. Subsequently, Plaintiff withdrew (1) all claims against any John Doe defendants, (2) the excessive force claims against Officer Fischer, (3) the conspiracy claim against all Defendants, (4) the supervisor liability claims against all Defendants, and (5) the *Monell* claim against the Borough of Pottstown. *See* Stipulation and Order (Dkt. No. 24).

On January 23, 2026, Defendants filed the pending Motion for Summary Judgment, seeking dismissal of the remaining claims: (1) the excessive force claim against Officer Ritter and (2) the bystander liability claim against Officers Ritter and Fischer.

**III. Legal Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the moving party shows that "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Mann v. Palmerton Area School District*, 872 F.3d 165, 170 (3d Cir. 2017) (citation and internal quotation marks omitted). A fact is "material" if, under the applicable substantive law, it is essential to the proper disposition of the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

The moving party "bears the burden of demonstrating the absence of any genuine issues of material fact. When determining whether there is a triable dispute of material fact, the court draws all inferences in favor of the non-moving party." *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820–21 (3d Cir. 2006) (citations and internal quotation marks omitted).

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must advance specific facts showing that there is a

genuine factual dispute. *See Marshall v. Sisters of Holy Family of Nazareth*, 399 F. Supp. 2d 597, 598 (E.D. Pa. 2005). The non-moving party may not rest on its pleadings but must point to probative evidence tending to support the complaint. *Anderson*, 477 U.S. at 256. “The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.” *Id*. at 252. If the “evidence presented by the [non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted.” *Id*. at 249–50.

## IV. Analysis

### A. Excessive Force Claim Against Officer Ritter

Excessive force claims are “properly analyzed under the Fourth Amendment’s ‘objective reasonableness’ standard.” *Ardo v. Pagan*, 652 F. Supp. 3d 545, 557 (E.D. Pa. 2023). “To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that [1] a ‘seizure’ occurred and [2] that it was unreasonable.” *Kopec v. Tate,* 361 F.3d 772, 776 (3d Cir. 2004).

#### 1. Officer Ritter’s Push Does Not Constitute a Seizure

Not every “push or shove” by a police officer constitutes a seizure “even if it may later seem unnecessary.” *Colon v. Kinnel*, No. 5:21-CV-03337-JMG, 2023 WL 1783774, at *4 (E.D. Pa. Feb. 6, 2023) (Gallagher, J.) (*quoting Graham v. Connor*, 490 U.S. 386, 396 (1989)). A seizure occurs “only where there is a governmental termination of freedom of movement through means intentionally applied.” *Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989); *see also Torres v. Madrid*, 592 U.S.

306, 317 (2021) ("A seizure requires the use of force with the intent to restrain."); *U.S. v. Smith*, 575 F.3d 308, 312 (3d Cir. 2009) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."). Force intentionally applied for some purpose other than restraining does not qualify as a Fourth Amendment seizure. *Torres*, 592 U.S. at 317. Accordingly, courts must inquire whether "the challenged conduct *objectively* manifests an intent to restrain." *Id*. at 307 (emphasis added).

Here, assuming Officer Ritter intentionally pushed Plaintiff,[3] the evidence demonstrates that Officer Ritter intended to separate Plaintiff and Nichols rather than to restrain her. Officer Ritter testified that he was separating Plaintiff and Nichols and that his "primary focus was to gain control of Mr. Nichols." Exhibit J at 41:23–42:21. Officer Ritter also testified that he was not paying any attention to Plaintiff during the altercation. *Id*. at 42:19–21. Notably, Plaintiff also states in her Response that "Defendant Ritter's intent was to physically separate Ms. Shrawder and Mr. Nichols." Plaintiff's Response (Dkt. No. 23) at 6. Thus, Officer Ritter's objective when he pushed Plaintiff is undisputed and, pursuant to *Torres*, he lacked the requisite intent to effectuate a seizure. *Torres*, 592 U.S. at 317.

The Court is not persuaded by Plaintiff's argument that a seizure occurred because Officer Ritter "intentionally used physical force to place [Plaintiff's] body elsewhere" other than the location that she wished to be – i.e. being by and hugging

[3] The parties dispute whether Officer Ritter intentionally pushed Plaintiff or whether he accidentally made contact with Plaintiff during the struggle. *See, e.g.*, Defendants' Brief in Support of Motion for Summary Judgment (Dkt. No. 22-1) at 4–5; Plaintiff's Response (Dkt. No. 23) at 6–7.

Nichols. *Id*. at 7. Plaintiff cites no Third Circuit case law, and the Court has found none, that supports the position that an intent to separate or preclude an individual from moving in a specific direction equates with an intent to restrain.

Other jurisdictions have rejected similar arguments. *See, e.g., Puente v. City of Phoenix,* 123 F.4th 1035, 1052 (9th Cir. 2024) (explaining that an "objective intent merely to disperse or exclude persons from an area—and without any measures objectively aimed at detaining or confining them in the process—does not involve the necessary 'intent to restrain' that might give rise to a 'seizure.'") *Pinto v. Collier Cnty*., No. 21-13064, 2022 WL 2289171, at *4, n.7 (11th Cir. June 24, 2022) (finding that a sheriff's deputy did not seize the plaintiff when he pushed the plaintiff to separate him from a nightclub manager during a fight); *Jones v. D.C.*, No. CV 21-836, 2021 WL 5206207, at *4 (D.D.C. Nov. 9, 2021) (explaining that "an intent to keep out or to redirect is not an intent to 'restrain' or to 'apprehend.'") Because the evidence demonstrates that Officer Ritter lacked the requisite intent to restrain Plaintiff, the Court holds that no seizure occurred as a matter of law.

**2. The Court Makes No Finding Related to Reasonableness**

To make a colorable claim of excessive force as an unreasonable seizure, the Plaintiff must establish both elements of the offense. In light of the above holding, the Court need not address the second element, the reasonableness of Officer Ritter's actions or Plaintiff's argument that the push was in response to a police-created exigency.

### B. Bystander Liability Claim Against Officer Ritter and Fischer

The Court also grants summary judgment to Defendants on Plaintiff's bystander-liability claims (also referred to as a failure to intervene claim in the parties' respective briefs). To succeed on a failure to intervene claim, a plaintiff must demonstrate that: "(1) the police officer failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a 'realistic and reasonable opportunity to intervene.'" *Shiloh v. Does*, No. 4:CV-12-1086, 2013 WL 5297511 (M.D. Pa. Apr. 19, 2013), report and recommendation adopted sub nom. *Shiloh v. John Does*, No. 4:12-CV-1086, 2013 WL 4761124, at *11 (M.D. Pa. May 14, 2013) (*quoting Smith v. Mensinger*, 293 F.3d 641, 650–53 (3d Cir. 2002)). As explained above, Officer Ritter's push did not amount to a seizure; thus, no constitutional violation exists.

## V. Conclusion

For the reasons explained above, Defendants' Motion is granted in its entirety.

DATED: 9/24/26

BY THE COURT:

[signature]

GAIL A. WEILHEIMER, J.